UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RONNIE F. BAKER, | ) | NO. CV 12-3011-E |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) | **AND ORDER OF REMAND** |
| | ) | |
| Defendant. | ) ) | |

Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS HEREBY ORDERED that Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

**PROCEEDINGS**

Plaintiff filed a complaint on April 12, 2012, seeking review of the Commissioner's denial of benefits. The parties filed a consent to proceed before a United States Magistrate Judge on May 15, 2012.

1  Plaintiff filed a motion for summary judgment on September 27, 2012.
2  Defendant filed a motion for summary judgment on October 29, 2012.
3  The Court has taken both motions under submission without oral
4  argument.  See L.R. 7-15; "Order," filed April 13, 2012.

**BACKGROUND**

Plaintiff asserts disability since April 1, 1992, based on a combination of alleged psychological and physical impairments, including post traumatic stress disorder ("PTSD") and back pain (Administrative Record ("A.R.") 29-914).  Plaintiff claims to have experienced symptomatology of disabling severity since at least 1992 (A.R. 31-46).

The Administrative Record contains evidence spread over several decades concerning the cause and the effects of Plaintiff's PTSD. Plaintiff assertedly "experienced numerous traumatic events while working as a photographer in Vietnam" during the Vietnam War (A.R. 574).  Plaintiff reportedly had to "take pictures of young children and women who had been killed . . . [and] once had to take pictures of 'huge stacks of dead bodies' while the general was standing beside him crying" (A.R. 585).  As a result of these reported traumas, Plaintiff allegedly has had "symptoms of re-experiencing, avoidance, numbing, and hyperarousal which have interfered with his life significantly" (A.R. 574; see also A.R. 585).

In 1984, a licensed clinical social worker authored some partially illegible handwritten notes describing very serious effects

of PTSD allegedly experienced by Plaintiff (A.R. 820-46).  Plaintiff reportedly resigned from a job in early 1984 because of homicidal impulses toward his supervisor (A.R. 820).  Plaintiff said he had flashbacks to Vietnam when he closed his eyes (A.R. 831).  Plaintiff said he was thinking of dressing in combat fatigues to play war in the woods (A.R. 820, 838).  Plaintiff also reportedly had suicidal ideation, planning to drive a car off the Bay Bridge (A.R. 830).  Plaintiff claimed that, when he was alone and thinking about his impulses, it seemed to him that he was rational, although he was also afraid he might be "crazy" (A.R. 833, 838).  The social worker consulted a doctor, who also interviewed Plaintiff (A.R. 834).  Although the doctor and the social worker concluded Plaintiff "was not committable [sic] at this time," they recommended that Plaintiff be hospitalized in a veterans' program for PTSD treatment.  However, Plaintiff declined or "sabotaged" planned hospitalizations, after expressing a fear of being held in a "psych ward and maybe never getting out" (A.R. 839-40).

In 1998, Plaintiff requested a psychiatric "assessment," apparently at the direction of a "Nevada judge," after Plaintiff was caught three times "feeding slugs into a slot machine" (A.R. 238).  Plaintiff then presented with "blunted affect and some suspiciousness" and admitted to "transient paranoia" (A.R. 238).  The person who then interviewed Plaintiff wrote:  "r/o bi-polar mood disorder r/o cluster A personality disorder r/o psychotic process" (A.R. 238).

A 2004 "Progress Note" reads (strangely):  "ptsd; pt states quit all care and has ben [sic] on his own trying to take care of it and

doing better than before. state being watchful about speena from Donald trump" (A.R. 230).  In 2007, a "4 question Primary Care PTSD screen" reportedly was "negative" (A.R. 231).  In 2008, Plaintiff refused recommended mental health treatment for "chronic sleep disorders and stress" (A.R. 272-73).

An undated progress note, perhaps from 2009, states "ongoing symptoms since Vnam.  Several outpt treatment at no. Calif. VAMC in 1998 and 2007" (A.R. 775).  On January 28, 2009, an examining psychologist described Plaintiff's "Chief Complaint" as "Depressed mood, easily startled, takes a while to calm down.  Becomes hot sweating in response to anxiety.  Also his [s]kin breaks out in rash.  Vigilant, concerned about safety.  Fears 'somebody will come and get me.'  Used to have guns all over the house, sit up on the roof with a rifle.  Self-isolates" (A.R. 227).

On July 27, 2009, Plaintiff entered outpatient treatment for "combat related PTSD" (A.R. 390, 847).  Dr. Bradley Warren, a treating psychiatrist, opined on August 17, 2010, that Plaintiff "has manifested the classic symptoms of PTSD and the accompanying psychosocial stressors that accompany this disorder . . . His prognosis for full recovery or for returning to employment is not good" (A.R. 847).  Dr. Shawn Lance, a treating internist, opined on September 3, 2010, that Plaintiff "remains disabled due to his medical and psychiatric conditions, some of which are due to his military service in combat" (A.R. 897).  Dr. Lance described Plaintiff's "medical problems" as "chronic pain due to lumbar spondylosis, migraine headache, intermittent recurrent kidney stones, and post-

4

traumatic stress disorder (PTSD)" (A.R. 897).

The Administrative Law Judge ("ALJ") found, <u>inter alia</u>:
(1) Plaintiff had not engaged in substantial gainful activity since April 1, 1992 (A.R. 15); (2) as of May 18, 2009, Plaintiff was disabled by reason of severe PTSD, chronic migraines, degenerative disc disease, and chronic urolithiasis (A.R. 18-20); and (3) prior to May 18, 2009, Plaintiff had no severe impairments whatsoever (A.R. 15-18).[1] The ALJ did not consult a medical advisor before selecting May 18, 2009 as the disability onset date. The Appeals Council denied review (A.R. 1-3).

**STANDARD OF REVIEW**

Under 42 U.S.C. section 405(g), this Court reviews the Administration's decision to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. <u>See</u> <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1159 (9th Cir. 2008); <u>Hoopai v. Astrue</u>, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation and quotations omitted); <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1067 (9th Cir. 2006). In reviewing a finding regarding

---

[1] An impairment is non-severe only if the impairment has "no more than a minimal effect on an individual's ability to work." Social Security Ruling 85-28; <u>see</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996) (the severity concept is a "<u>de minimis</u> screening device to dispose of groundless claims").

5

disability onset, the question "is whether the onset date actually chosen is supported by substantial evidence, not whether another date could reasonably have been chosen." Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

**DISCUSSION**

"Social Security Ruling [SSR] 83-20 sets forth guidelines for determining the date of onset of a disability. . . ." DeLorme v. Sullivan, 924 F.2d 841, 848 (9th Cir. 1991).[2] In pertinent part, SSR 83-20 provides:

> In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy. However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.
>
> * * *
>
> <u>How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment</u>

---

[2] Social Security rulings are "binding on ALJs." Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990); see 20 C.F.R. § 402.35(b)(1).

6

>of the facts in the particular case. This judgment,
>however, must have a legitimate medical basis.
>
>* * *
>
>The onset date should be set on the date when it is most
>reasonable to conclude from the evidence that the impairment
>was sufficiently severe to prevent the individual from
>engaging in SGA (or gainful activity) for a continuous
>period of at least 12 months or result in death. Convincing
>rationale must be given for the date selected.

Id. (emphasis added).

Where a claimant suffers from impairments not resulting from a single trauma, the appropriate onset date may be particularly difficult to select. "If the 'medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination.'" Armstrong v. Commissioner of Social Security Admin., 160 F.3d 587, 589-90 (9th Cir. 1998) ("Armstrong") (quoting DeLorme v. Sullivan, 924 F.2d at 848); see also Cero v. Commissioner of Social Security Admin., 473 Fed. App'x 536, 538 (9th Cir. Mar. 29, 2012) (discussing same); SSR 83-20 (ALJ "should call on the services of a medical advisor when onset must be inferred"). "[A]fter the ALJ has created a record and has a basis for selecting an onset date, the claimant who wishes to challenge that date bears the

7

burden of proof." Armstrong, 160 F.3d at 590 (emphasis added).

In the present case, Defendant argues that the medical evidence of record is "inconsistent" with Plaintiff's assertion of an April 1, 1992, disability onset (Defendant's Motion at 5). After reviewing the entire medical record, the Court discerns no such inconsistency, although the medical record is sparse and the Court's analysis is somewhat hampered by the illegibility of portions of the record.[3]

In rejecting the possibility of an onset date earlier than May 18, 2009, the ALJ appears to have relied on Plaintiff's relative lack of documented treatment, as well as on evidence that Plaintiff did some kind of work long after Plaintiff's alleged onset date (A.R. 17). As explained below, neither consideration provides a "convincing rationale" for the ALJ's selection of a May 18, 2009 disability onset date. See SSR 83-20 ("convincing rationale must be given for the date selected"); see also DeLorme v. Sullivan, 924 F.2d at 848 (ALJ must consider all evidence available to make onset determination; "If medical evidence is not available, then lay evidence may be obtained.").

The fact that the record does not reflect any treatment for PTSD in the 1970's is unsurprising. Before 1980, PTSD did not exist as a clinically recognized diagnosis. Bradford v. Astrue, 2010 WL 5648875, at *9 (D. Or. 2010), adopted, 2011 WL 284457 (D. Or. Jan. 26, 2011).

---

[3] See A.R. 832-44, 886-92; see also Brissett v. Heckler, 730 F.2d 548, 550 (8th Cir. 1984) (remand warranted where material portions of the administrative record were illegible).

8

Documentation of Plaintiff's PTSD treatment 1984 through 2008 is sparse, but this sparsity does not justify the selection of a May 18, 2009 disability onset date. Courts have described PTSD as a "progressive impairment," or at least as "akin to a progressive impairment." See Savoie v. Astrue, 2012 WL 3044134, at *4 (D. Or. July 25, 2012); Ott v. Chater, 899 F. Supp. 550, 553 (D. Kan. 1995); see also Jones v. Chater, 65 F.3d 102, 103 (8th Cir. 1995) ("Although PTSD may not be degenerative in the same classic sense as a condition like diabetes, PTSD is an unstable condition that may not manifest itself until well after the stressful event which caused it, and may wax and wane after manifestation"). Given the unusual nature of PTSD, and given indications in the record that Plaintiff experienced significant PTSD symptoms long prior to 2009 (and even prior to 1992) the mere sparsity of the treatment record does not warrant the denial of Plaintiff's claim. See Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) ("appellant may have failed to seek psychiatric treatment for his mental condition but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation") (quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)). Moreover, the ALJ plainly violated SSR 83-20 by failing to consult a medical advisor and by failing to attempt to obtain additional medical evidence or lay evidence to help determine the onset of disability. See, e.g., Savoie v. Astrue, 2012 WL 3044134, at *6; Bradford v. Astrue, 2010 WL 5648875, at *18-19; see generally Armstrong, 160 F.3d at 590 ("[W]e reaffirm this court's previous holding that where a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date. . . . Rather than just inferring an onset

1  date, which would deny a claimant benefits, SSR 83-20 requires that
2  the ALJ create a record which forms a basis for that onset date.  The
3  ALJ can fulfill this responsibility by calling a medical expert or
4  where medical testimony is unhelpful, exploring lay evidence including
5  the testimony of family, friends or former employers to determine the
6  onset date.").

8      The reported fact that Plaintiff did some work after Plaintiff's
9  alleged April 1, 1992 onset date also does not provide a "convincing
10 rationale" for the May 18, 2009 onset date selected by the ALJ.  The
11 ALJ agreed that Plaintiff did not engage in any substantial gainful
12 activity after April 1, 1992 (A.R. 15).  The significance of whatever
13 work Plaintiff performed after April 1, 1992 (reportedly "seminars"
14 and "business consultations") remains unexplained on the present
15 record.  This lack of explanation prevents the Court from evaluating
16 whether Plaintiff's post-April 1, 1992 work properly may undercut
17 Plaintiff's claimed disability onset date.

19     In sum, the ALJ's May 18, 2009 onset date determination was not a
20 properly "informed judgment" supported by "convincing rationale," as
21 required by SSR 83-20.  On the present record, substantial evidence
22 does not support the ALJ's determination.  See id.; Magallanes v.
23 Bowen, 881 F.2d at 750.  In particular, no record evidence supports
24 the ALJ's determination that progressive impairments not even "severe"
25 ///
26 ///
27 ///
28 ///

10

on May 17, 2009, became both severe and disabling the very next day.[4]

The appropriate remedy in the present case is a remand for further administrative proceedings. See INS v. Ventura, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, except in rare circumstances); McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011) (where the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate).

///
///
///
///
///
///
///
///

---

[4] It is true that pinpoint accuracy in determining the onset of disability may not be possible where, as here, the claimant's impairments worsened over time. Even so, SSR 83-20 requires more justification underpinning the selection of a disability onset date than was given here. It is also true that, unless Plaintiff's disability onset date occurred on or before his last insured date (December 31, 1997), the ALJ's errors would not affect Plaintiff's benefits. The Court cannot find the ALJ's errors harmless on the present record, however. Without additional medical evidence or lay evidence, and without input from a medical advisor, the record cannot support any "convincing rationale" for a conclusion that Plaintiff's disability onset post-dated December 31, 1997.

**CONCLUSION**

For all the foregoing reasons, Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 8, 2012.

```
              _____/S/_____
                   CHARLES F. EICK
              UNITED STATES MAGISTRATE JUDGE
```